UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| HAROLD LITWIN, | : |
| | : Case No._____ |
| Plaintiff, | : |
| | : **COMPLAINT FOR VIOLATIONS OF** |
| vs. | : **THE FEDERAL SECURITIES LAWS** |
| | : |
| EMPIRE RESORTS, INC., EMANUEL R. PEARLMAN, KEITH HORN, GERARD EWE KENG LIM, EDMUND MARINUCCI, and NANCY A. PALUMBO, | : JURY TRIAL DEMANDED |
| | : |
| Defendants. | : |

---

Plaintiff Harold Litwin ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

## NATURE AND SUMMARY OF THE ACTION

1.   This action is brought by Plaintiff against Empire Resorts, Inc. ("Empire Resorts" or the "Company") and the members of Empire Resorts' Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Empire Resorts will be acquired by and among Hercules Topco LLC, a Delaware limited liability company ("Parent"), and Hercules Merger Subsidiary Inc., a Delaware corporation and a wholly-owned subsidiary of Parent ("Merger

Sub") (the "Proposed Transaction"). Parent and Merger Sub are affiliates of Kien Huat Realty III Limited ("Kien Huat") and Genting (USA) Limited ("Gen USA"), which is indirectly wholly owned by Genting Malaysia Berhad ("GenM"). Kien Huat is currently the holder of approximately 86% of the voting power of the Company's outstanding capital stock, including common stock issuable upon conversion of the Company's Series F convertible preferred stock.

2. On August 18, 2019, Empire Resorts issued a press release announcing that they had entered into an Agreement and Plan of Merger dated August 18, 2019 (the "Merger Agreement"). Under the terms of the Merger Agreement, each Empire Resorts stockholder will be entitled to receive $9.74 in cash for each share of Empire Resorts common stock they own (the "Merger Consideration").

3. The Merger Agreement provides for the merger of Merger Sub with and into the Company, with the Company surviving as a subsidiary of Parent.

4. On October 11, 2019, Empire Resorts filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Empire Resorts stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the background process leading to the Proposed Transaction; (ii) potential conflicts of interest faced by Company insiders and the financial advisor to the special committee of the Board ("Special Committee"), Moelis & Company LLC ("Moelis"); and (iii) the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Special Committee's financial advisor, Moelis. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

5. In short, unless remedied, Empire Resorts' public stockholders will be irreparably

harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting or appraisal decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Empire is incorporated in Delaware and is headquartered in this District. Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Empire Resorts.

9. Defendant Empire Resorts is a Delaware corporation, and its principal business address is c/o Monticello Casino and Raceway, 204 State Route 17B, P.O. Box 5013, Monticello, NY. Empire Resorts serves as a holding company for various subsidiaries engaged

in the hospitality and gaming industries. Empire Resorts owns and operates Resorts World Catskills, an all-season integrated destination casino resort located in Sullivan County, New York, approximately 90 miles from New York City, including the 101-room lifestyle hotel, The Alder, adjacent to the casino. Empire Resorts also owns and operates Monticello Raceway, a harness horseracing facility that began racing operations in 1958 in Monticello, New York. The Company's common stock trades on the NASDAQ Global Select Market under the ticker symbol "NYNY."

10. Defendant Emanuel R. Pearlman ("Pearlman") has been a director of the Company since May 2010 and Executive Chairman of the Board since June 2016.

11. Defendant Keith Horn ("Horn") has been a director of the Company since April 2016.

12. Defendant Gerard Ewe Keng Lim ("Lim") has been a director of the Company since September 2017. Lim serves as a director of Kien Huat, the Company's largest stockholder.

13. Defendant Edmund Marinucci ("Marinucci") has been a director of the Company since March 2014.

14. Defendant Nancy A. Palumbo ("Palumbo") has been a director of the Company since June 2009.

15. Defendants identified in paragraphs 10–14 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

16. Kien Huat, an Isle of Man company limited by shares, acts as an investment holding company for investments held ultimately for a trust for the benefit of Tan Sri Lim Kok

Thay and certain other members of his family. Kien Huat is currently the holder of approximately 86% of the voting power of the Company's outstanding capital stock.

17. GenM, a Malaysian public company limited by shares, is one of the leading destination resort operators in the world. Tan Sri Lim Kok Thay owns, directly and indirectly, 49.83% of the voting shares of GenM.

18. Gen USA, an Isle of Man company limited by shares, is indirectly wholly-owned by GenM.

19. Parent is a Delaware limited liability company in which Gen USA currently holds a 49% membership interest and Kien Huat currently holds a 51% membership interest.

20. Merger Sub is a Delaware corporation and wholly-owned subsidiary of Parent.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and Proposed Transaction**

21. Empire Resorts was organized as a Delaware corporation on March 19, 1993 and, since that time, has served as a holding company for various subsidiaries engaged in the hospitality and gaming industries.

22. The Company's indirect, wholly-owned subsidiary, Montreign Operating Company, LLC, doing business as Resorts World Catskills, owns and operates Resorts World Catskills, a casino resort, which is located at the approximately 1,700-acre site of a four-season destination resort in Sullivan County, New York, approximately 90 miles from New York City. The destination resort in which Resorts World Catskills is located also includes a 101-room lifestyle hotel, The Alder, adjacent to the casino.

23. Through its wholly-owned subsidiary, Monticello Raceway Management, Inc., the Company owns and operates Monticello Raceway, which began racing operations in 1958 in Monticello, New York. Formerly known as Monticello Casino and Raceway, Monticello

Raceway currently features a harness horseracing facility. The Company also generates racing revenues through pari-mutuel wagering on the running of live harness horse races, the import simulcasting of harness and thoroughbred horse races from racetracks across the country and internationally, and the export simulcasting of the Company's races to offsite pari-mutuel wagering facilities.

24. On August 19, 2019, Empire Resorts issued a press release announcing the Proposed Transaction. The press release states, in relevant part:

> **MONTICELLO, N.Y. August 19, 2019** — Empire Resorts, Inc. (NasdaqGM: NYNY) ("Empire Resorts" or the "Company") today announced a definitive agreement under which affiliates of Kien Huat Realty III Limited ("Kien Huat") and Genting Malaysia Berhad ("Genting Malaysia") will acquire all of the outstanding equity of the Company not currently owned by Kien Huat or its affiliates for $9.74 in cash per share of common stock, and with each share of the Company's Series B preferred stock receiving the same consideration on an as-converted to common stock basis. Kien Huat is currently the holder of approximately 86% of Empire Resorts' outstanding shares of common stock, including common stock issuable upon conversion of the Company's Series F convertible preferred stock.
>
> The purchase price represents a premium of approximately 15% over the closing share price of Empire Resorts' common stock on August 16, 2019, the last trading day prior to today's announcement. The Board of Directors of Empire Resorts has approved the transaction on the unanimous recommendation of the previously formed special committee of independent directors.
>
> Empire Resorts and Kien Huat also amended Kien Huat's existing preferred stock commitment letter with the Company, which, subject to the terms thereof, enhances Empire Resorts' access to capital through February 2020. The amendment increases Kien Huat's remaining commitments from $52 million to $77 million. This credit support will enable the Company to continue satisfying its debt obligations, while facilitating its operating strategy.
>
> "We are pleased to reach this agreement and provide immediate certain cash value to our stockholders," said Keith Horn, independent director of Empire Resorts and chair of the special committee. "Kien Huat has been a true partner for Empire Resorts, and we look forward to welcoming Genting Malaysia into our ongoing relationship. With Kien Huat and Genting Malaysia, we will be part of an extensive and attractive organization with enhanced scale and global reach. Importantly, Kien Huat has agreed to provide incremental credit support to

Empire Resorts, which will enable the Company to meet its debt obligations as we continue to execute on our business strategy."

Ryan Eller, President and Chief Executive Officer of Empire Resorts, said, "With the resources and support of Kien Huat and Genting Malaysia, Empire Resorts will be better positioned financially and operationally, which will help us advance our mission of delivering a winning combination of luxury facilities, quality entertainment and exceptional customer service. This transaction is a win-win for all our stakeholders, including our stockholders, customers, employees, creditors and the communities in which we operate. Importantly, we expect our employees will benefit from new opportunities for career development as part of a larger organization. I look forward to working closely with Kien Huat and Genting Malaysia to seamlessly complete the transaction."

**Transaction Details**

Under the terms of the agreement, Empire Resorts' special committee, with the assistance of its financial advisor, will conduct a 10-business day "go-shop" process following the date of the announcement of the definitive agreement, during which it will actively initiate, solicit, encourage and evaluate alternative acquisition proposals, and potentially enter into negotiations with any parties that may offer alternative acquisition proposals. This process will facilitate our efforts to maximize value for stockholders. Empire Resorts will have the right to terminate the definitive agreement to accept a superior proposal, if one is received, subject to the terms and conditions of the definitive agreement. There can be no assurance that this "go-shop" process will result in a superior proposal or that any other transaction will be approved or completed. Empire Resorts does not intend to disclose developments with respect to the solicitation process unless and until its special committee makes a determination requiring further disclosure.

The transaction is expected to close in the fourth quarter of 2019. The transaction requires "majority of the minority" stockholder approval and provides an opportunity for Empire Resorts' stockholders to exercise their appraisal rights in connection with the proposed transaction. The transaction is also subject to the satisfaction of customary closing conditions and regulatory approvals, including obtaining specified gaming authority approvals and performance of the parties' contractual obligations through closing. Kien Huat has also entered into a voting agreement under which it has committed its voting shares in support of the transaction. Upon completion of the transaction, Empire Resorts will become a privately-held company and its common stock will no longer be listed on any public market.

Moelis & Company LLC is serving as financial advisor to Empire Resorts' special committee and Paul, Weiss, Rifkind, Wharton & Garrison LLP is serving as its legal advisor. Cleary Gottlieb Steen & Hamilton LLP is serving as legal advisor to Genting Malaysia.

**Insiders' Interests in the Proposed Transaction**

29. Empire Resorts insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and Empire Resorts' public stockholders.

30. The Company's insiders stand to reap substantial financial benefits for securing the Proposed Transaction. For example, certain equity awards, including Empire Resorts restricted stock units ("RSU") and "Company Stock Awards", will be subject to accelerated vesting following completion of the Proposed Transaction. The following table shows, for each member of the Board and for each named executive officer of the Company, as applicable: (1) the number of shares of common stock underlying outstanding RSU awards and the number of shares of common stock subject to unvested Company Stock Awards and (2) the value of such awards.

| Name | RSUs (#) | Value ($) | Company Stock Awards (#) (1) | Value ($) |
|---|---|---|---|---|
| **Directors** | | | | |
| Emanuel R. Pearlman | 100,000 | $ 974,000 (2) | 18,750 | $ 182,625 |
| Keith R. Horn | 17,400 | $ 169,476 (2) | — | $ — |
| Edmund Marinucci | 17,400 | $ 169,476 (2) | — | $ — |
| Nancy Palumbo | 17,400 | $ 169,476 (2) | — | $ — |
| Gerard Ewe Keng Lim | 17,400 | $ 169,476 (2) | — | $ — |
| **Current Officers** | | | | |
| Ryan Eller | 90,000 | $ 876,600 (2) | — | $ — |
| Nanette L. Horner | 30,100 | $ 293,174 (2) | — | $ — |
| Jamie M. Sanko | 40,000 | $ 389,600 (2) | — | $ — |

31. Additionally, the following table sets forth for each member of the Board and for each executive officer of the Company, as applicable: (1) the number of shares of common stock held by such individual, and (2) the value of such common stock Company insiders stand to receive in connection with the Proposed Transaction:

| Name | Shares of Empire Resorts, Inc. Common Stock (#) | Value ($) |
|---|---|---|
| **Directors** | | |
| Emanuel R. Pearlman | 39,581 | $ 385,519 |
| Keith L. Horn | 9,250 | $ 90,095 |
| Edmund Marinucci | 10,622 | $ 103,458 |
| Nancy Palumbo | 21,372 | $ 208,163 |
| Gerard Ewe Keng Lim | 4,875 | $ 47,483 |
| **Current Officers** | | |
| Ryan Eller | 0 | $ 0 |
| Nanette L. Horner | 8,734 | $ 85,069 |
| Jamie M. Sanko | 0 | $ 0 |

32. Moreover, if they are terminated in connection with the Proposed Transaction, Empire Resorts' executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| Name (1) | Cash ($) | Equity ($) | Pension/ NQDC ($) | Perquisites/ Benefits ($) | Tax Reimbursement ($) | Other ($) | Total ($) |
|---|---|---|---|---|---|---|---|
| Emanuel Pearlman, Chairman (2) | $ 0 | $1,156,625 | $0 | $0 | $0 | $ 0 | $1,156,625 |
| Ryan Eller, Chief Executive Officer (3) | $1,200,000 | $ 876,600 | $0 | $0 | $0 | $42,528 | $2,119,128 |
| Nanette L. Horner, Executive Vice President, Chief Counsel and Chief Compliance Officer (4) | $ 600,000 | $ 293,174 | $0 | $0 | $0 | $27,840 | $ 921,014 |
| Jamie M. Sanko, Chief Accounting Officer (5) | $ 800,000 | $ 389,600 | $0 | $0 | $0 | $42,528 | $1,232,128 |

33. Furthermore, the members of the Special Committee formed to consider and negotiate the terms and conditions of the Proposed Transaction, consisting of defendants Horn, Palumbo and Marinucci, will receive compensation of $48,000 on an annualized basis and the chairman of the Special Committee, defendant Horn, will receive an additional $48,000 on an annualized basis for service as the Chairman of the Special Committee.

**The Proxy Statement Contains Material Misstatements or Omissions**

32. Defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Empire Resorts' stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

33. Specifically, as set forth below, the Proxy Statement fails to provide Company

stockholders with material information or provides them with materially misleading information concerning: (i) the background process leading to the Proposed Transaction; (ii) potential conflicts of interest faced by Company insiders and the Special Committee's financial advisor, Moelis; and (iii) the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Special Committee's financial advisor, Moelis.

***Material Omissions Concerning the Background of the Proposed Transaction***

34. The Proxy Statement omits material information relating to the process leading to the Proposed Transaction.

35. For example, according to the Proxy Statement:

> During the Go-Shop Period (which ran from signing of the Merger Agreement to 12:00 p.m. Eastern Time on August 30, 2019), the Company, with the assistance of Moelis, the financial advisor to the Special Committee, contacted 19 potential bidders. Each party that was contacted either notified the Company that it would not be interested in pursuing a potential transaction with the Company or did not respond. The Company also continued its discussions with Party A and received a second inbound indication of interest from another potential financing source. Ultimately, however, both of these parties failed to make a proposal constituting a "Takeover Proposal" as defined by the Merger Agreement.

Proxy Statement at 35-36.

36. The Proxy Statement fails, however, to disclose the details of the proposals from Party A and "another potential financing source" which purportedly did not constitute a "Takeover Proposal" as defined by the Merger Agreement. Accordingly, Company stockholders are left without the material information necessary to evaluate the competing level of interest that was submitted to Empire Resorts.

37. In addition, the Proxy Statement fails to disclose whether any of the 19 potential bidders, including Party A and the potential financing source, entered into confidentiality agreements with the Company and the details thereof, including whether the confidentiality

agreements contained standstill and/or "don't ask, don't waive" standstill provisions that are presently precluding these parties from submitting topping bids for the Company.

38. The disclosure of the terms of any standstill provisions in the confidentiality agreements Empire Resorts entered into with potential merger partners is crucial to Empire Resorts stockholders being informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.

39. The omission of this information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Company Insiders' and Moelis' Potential Conflicts of Interest*

40. The Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by the Company's insiders.

41. For example, at an August 5, 2019 Special Committee meeting, the Proxy Statement sets forth that "the Special Committee discussed matters relating to retention bonuses and similar payments for certain employees in connection with a potential transaction with Kien Huat and GenM." *Id*. at 27. Then, at an August 7, 2019 Special Committee meeting, "the Special Committee discussed, among other things, treatment of the Company's restricted stock units in connection with the potential transaction with Kien Huat and GenM, possible retention payments relating to the potential transaction with Kien Huat and GenM . . . ." *Id*.

42. The Proxy Statement further sets forth that "the Merger Agreement requires Parent to continue to provide certain compensation and benefits following the completion of the Merger to all Company employees, including the Company's executive officers, who remain employed by the Company following completion of the Merger." *Id.* at 76. Yet, the Proxy

Statement fails to disclose the details of all employment and retention-related discussions and negotiations that occurred between Kien Huat and GenM and Empire Resorts, including who participated in all such communications, when they occurred and their content. The Proxy Statement further fails to disclose whether any of Kien Huat and GenM's prior proposals or indications of interest mentioned management retention with the combined company.

43. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

44. The Proxy Statement also fails to disclose material information concerning potential conflicts of interest faced by the Special Committee's financial advisor Moelis.

45. For example, the Proxy Statement sets forth that:

> Moelis in the past provided and currently provides investment banking and other services to the Company unrelated to the Merger and has received and may receive compensation for such services. In the two years prior to the date of Moelis' opinion, Moelis acted, among other things, (i) as a financial advisor to the Company in connection with a capital markets transaction in January 2017, (ii) as a financial advisor to the Company in connection with a capital markets transaction in May 2017, (iii) as a financial advisor to a subsidiary of the Company for general advisory services in December 2017, (iv) as a financial advisor to the Company in connection with a sports betting strategic alliance in November 2018, and (v) currently as a financial advisor to the Company in connection with a potential acquisition transaction. Moelis may in the future provide investment banking and other services for the Company, Parent, or any their respective affiliates, including of the Parent Filing Group Persons, and may receive compensation for such services. Since January 2017, Moelis received fees from the Company and its subsidiaries for investment banking services of approximately $7,125,000.

*Id.* at 53

46. However, the Proxy Statement fails to disclose any financial advisory and/or other financial services Moelis has provided to Parent or its affiliates in the two years prior to the

signing of the Merger Agreement, and any compensation Moelis has received for such services.

47. In addition, according to the Proxy Statement "Mr. Gregg Polle, who served as a director of the Company from December 2010 to July 2019, was a Managing Director of Moelis until July 23, 2019." *Id.* The Proxy Statement, however, fails to disclose whether, prior to retaining Moelis in February 2019, the Special Committee considered retaining an alternate advisor in light of this conflict.

48. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

49. The omission of this information renders the statements in the "Background of the Merger," "Interests of the Company's Directors and Executive Officers in the Merger" and "Opinion of Financial Advisor to the Special Committee" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Company's Financial Projections and Moelis' Financial Analyses***

50. The Proxy Statement omits material information regarding the Company's financial projections.

51. The Proxy Statement fails to disclose, for each of Empire Resorts' projections (the Long Term Financial Model and the Long Term Financial Model with Online Sportsbetting): (i) unlevered free cash flows and the underlying line items; and (ii) the line items underlying adjusted EBITDA, including (a) earnings; (b) interest; (c) taxes; and (d) depreciation and amortization.

52. The Proxy Statement also omits material information regarding Moelis' financial analyses.

53. The Proxy Statement describes Moelis' fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Moelis' fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Empire Resorts' public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Moelis' fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

54. With respect to Moelis' *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose, for each of Scenario A and Scenario B: (i) Empire Resorts' estimated after-tax unlevered free cash flows for the period from October 1, 2019 to December 31, 2024; (ii) the terminal values for the Company; (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 8.5% to 10.0%; and (iv) the implied perpetuity growth rates resulting from the analysis.

55. Without such undisclosed information, Empire Resorts stockholders cannot evaluate for themselves whether the financial analyses performed by Moelis were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Moelis' opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

56. The omission of this material information renders the statements in the "Projected Financial Information" and "Opinion of Financial Advisor to the Special Committee" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

57.     The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other Empire Resorts stockholders will be unable to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

51.     Plaintiff repeats all previous allegations as if set forth in full.

52.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

53.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the background process leading to the Proposed Transaction, potential conflicts of interest faced by Company insiders and the Special Committee's financial advisor, and the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Special Committee's financial advisor.  The defendants were at least negligent in

filing the Proxy Statement with these materially false and misleading statements.

54. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or seek to exercise their appraisal rights.

55. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

56. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

57. Plaintiff repeats all previous allegations as if set forth in full.

58. The Individual Defendants acted as controlling persons of Empire Resorts within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Empire Resorts, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

59. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

60. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

61. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

62. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

63. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Empire Resorts' stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in

      concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Empire Resorts stockholders;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: October 29, 2019                            **WEISSLAW LLP**

                                                             By: /s/ Richard A. Acocelli
                                                              Richard A. Acocelli
                                                              1500 Broadway, 16th Floor
                                                              New York, New York 10036
                                                              Tel: (212) 682-3025
                                                              Fax: (212) 682-3010
                                                              Email: racocelli@weisslawllp.com

                                                              *Attorneys for Plaintiff*